**WISCONSIN'S ENVIRONMENTAL DECADE, INC., Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent,**

**WPL Holdings, Inc., Intervenor.**

No. 88–1320.

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1989.

Decided Aug. 15, 1989.

Scott Hempling, Washington, D.C., for petitioner.

J. Leroy Thilly, Madison, Wis., entered an appearance, for amicus curiae Wisconsin Public Power, Inc.

Martha H. McNeely, Special Counsel, S.E.C., with whom Daniel L. Goelzer, Gen. Counsel, and Jacob H. Stillman, Associate Gen. Counsel, S.E.C., Washington, D.C., were on the brief, for respondent.

Batya Roth also entered an appearance, for respondent.

Clark Evans Downs, Washington, D.C., was on the brief, for intervenor WPL Holdings, Inc.

Before RUTH BADER GINSBURG and SENTELLE, Circuit Judges, and RE.*

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Wisconsin's Environmental Decade, Inc., has petitioned for review of an order of the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935. The order approved the application of WPL Holdings, Inc. to acquire all the stock of Wisconsin Power and Light Company and to thereafter be exempt from all but the acquisition-review provisions of the Act. We grant the petition for the reasons set out below.

## I. BACKGROUND

### A. *Statutory Background*

Public utility holding companies and their affiliates are regulated by the Securities and Exchange Commission ("SEC") under the provisions of the Public Utility Holding Company Act of 1935 ("PUHCA" or "the Act"), 15 U.S.C. §§ 79 to 79z–6 (1982 & Supp. V 1987). The Act requires SEC approval to acquire a five-percent or greater voting interest (including an indirect interest) in two or more public utilities. *See id.* §§ 79i(a)(2), 79b(a)(11)(A). PUHCA directs the SEC to apply multiple tests in its consideration of an application for such approval, several of which are pertinent here. First, section 10(c)(1) provides that the SEC "shall not approve" an acquisition that is "detrimental" to the "simplification" mandate of the Act. *Id.* § 79j(c)(1). *See id.* § 79k (directing the SEC to, *inter alia,* simplify and eliminate unnecessary complexities in registered holding companies and their subsidiaries). Second, section 10(c)(2) mandates that the Commission "shall not approve" an acquisition unless it finds the acquisition "will serve the public interest by tending towards the economical and efficient development of an integrated public-utility system." *Id.* § 79j(c)(2).[1] Finally, if other conditions are met, the SEC

"shall approve the acquisition unless" it finds that the acquisition "will unduly complicate the capital structure of the holding-company system of the applicant or will be detrimental to the public interest or the interest of investors or consumers or the proper functioning of such holding-company system." *Id.* § 79j(b)(3). The SEC has the power to condition its approval as it finds necessary or appropriate. *Id.* § 79j(e).

In addition, the statute directs the SEC to exempt from the requirements of PUHCA a holding company and its subsidiaries that "are predominately intrastate in character and carry on their business substantially in a single State," *id.* § 79c(a)(1), "unless and except insofar as it finds the exemption detrimental to the public interest or the interest of investors or consumers," *id.* § 79c(a).

### B. *Factual Background*

Wisconsin Power and Light Company ("WP & L") is a publicly traded Wisconsin utility and holding company. It owns one-hundred percent of South Beloit Water, Gas and Electric Company ("South Beloit"), an Illinois utility with a service territory adjacent to WP & L's own, and a 33.1% interest in Wisconsin River Power Company ("River Power"), a Wisconsin corporation engaged in hydroelectric generation. In addition, WP & L has several non-utility subsidiaries. Since 1936, WP & L has been exempt as a localized, predominately operational holding company from all but the acquisition-approval requirements of the Act. *Wisconsin Power & Light Co.,* 1 S.E.C. 362 (1936).

In April 1987, WPL Holdings, Inc. ("Holdings"), a newly formed Wisconsin corporation, applied to the SEC for approv-

---

\* Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

1. To qualify as an "integrated public-utility system," the "physical interconnection" of an electric utility's "utility assets" must be capable of operating "as a single interconnected and coordinated system confined in its operations to a single area or region" that is small enough to realize "the advantages of localized management, efficient operation, and the effectiveness of regulation." 15 U.S.C. § 79b(a)(29)(A).

al to acquire all the stock of WP & L (and thereby, indirectly, five-percent-or-greater interests in South Beloit and River Power as well). Holdings was organized to replace WP & L at the head of the corporate family and to reorganize operations into a utility group under WP & L and a non-utility group under Heartland Development Corporation. The proposed reorganization would ostensibly help WP & L "more effectively address the growing national competition in the energy industry, refocus various utility activities, facilitate selective diversification into non-utility businesses, afford separation between the utility and non-utility businesses, and provide additional flexibility for financing and maintaining appropriate utility capital ratios." *WPL Holdings, Inc.,* 40 S.E.C. Docket 634, 636 (1988). Related applications to the Public Utility Commission of Wisconsin, Illinois Commerce Commission, and Federal Energy Regulatory Commission were approved before the SEC rendered its decision.

In accordance with state law the Public Service Commission of Wisconsin imposed a variety of conditions on its approval. *See* Wis.Stat.Ann. § 196.795 (West Supp.1988). In particular, the order of the Wisconsin agency limited the sum of all assets of the non-utility affiliates to twenty-five percent of the assets of WP & L, required Holdings to pass through to its shareholders WP & L's dividends until WP & L reaches and maintains a fifty-percent common-equity capitalization, required WP & L to base its dividend policy solely on its own capital needs and financial health, and required the system to file various reports, plans, and agreements. *See WPL Holdings,* 40 S.E.C. Docket at 641.

## C. *The Decision Below*

Wisconsin's Environmental Decade, Inc. ("Decade"), a not-for-profit environmental and consumer corporation, opposed Holdings's application to the SEC on three grounds that have been brought forward for our review. First, Decade contended that the reorganization was not one "tending towards ... an integrated public-utility system," as required by section 10(c)(2) of PUHCA, 15 U.S.C. § 79j(c)(2), because it added nothing to an already integrated system. Second, Decade contended that the reorganization would facilitate diversification, deemed harmful by section 11(b)(1) of the Act. *See id.* § 79k(b)(1). Third, Decade contended that the addition of a non-operational holding company would unnecessarily complicate WP & L's corporate structure in violation of sections 10(c)(1) and 11(b)(2) of the Act. *See id.* §§ 79j(c)(1), 79k(b)(2).[2]

The Commission's economical discussion of these issues, 40 S.E.C. Docket at 647–48, 656, largely incorporated the SEC's decision in *Wisconsin Energy Corp.,* 37 S.E.C. Docket 387 (1986). The facts of that case are in all material respects identical to those in the present petition. As to the integrated system requirement, the SEC in both cases simply relied upon its decision in *Peoples Gas Light & Coke Co.,* 43 S.E.C. 624, 630 (1967), as authority for the conclusion that section 10(c)(2)'s requirement that an acquisition "tend[ ] towards" the efficient development of "an integrated public-utility system," 15 U.S.C. § 79j(c)(2), is satisfied when an acquisition makes no change in an already integrated system. *WPL Holdings,* 40 S.E.C. Docket at 648.

As to diversification, the SEC cited *Northern States Power Co.,* 36 S.E.C. 1, 8 (1954), for the proposition that it owed substantial deference to the determination of the Wisconsin legislature that diversification by public utilities is a benefit to the public, provided there is no conflict with federal law. 40 S.E.C. Docket at 648. The Commission concluded that there was no such conflict because the anti-diversification strictures of PUHCA are not applicable "to the same extent" to exempt companies as to registered companies and because the state had limited the percentage of non-utility assets and imposed other safeguards. *Id.* Moreover, the SEC re-

---

2. Decade's agency-level challenge to an intrastate exemption for Holdings has not been

brought forward.

tained the power to re-examine the diversification issue if abuses arose.

The Commission made no express mention in the instant decision of the argument regarding complication of corporate structure. *Wisconsin Energy*, 37 S.E.C. Docket 387, however, upon which the SEC expressly relied, contains a fuller analysis, describing, among other benefits, the advantages of having a non-utility parent company serve as a regulating mechanism for retaining earnings within the corporate group during times of low capital expenditures. *Id.* at 397. The SEC also explained that diversification by collateral affiliates has less impact on investor confidence, and therefore the cost of capital, than ventures by direct-line affiliates of a public utility. *Id.* Finally, in *Wisconsin Energy*, the SEC noted the "additional financing alternatives" afforded by the existence of a corporate parent. *Id.* The SEC approved Holdings's application. 40 S.E.C. Docket at 657.

## II. ANALYSIS

■ The issues before us are predominately ones of statutory interpretation.[3] Accordingly, our inquiry is whether the language of the statute evinces an unambiguously expressed intent of Congress on the points before us; lacking such direction, we are to accept the reasonable interpretations of the administering agency. *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

### A. *Section 3(a)*

■ The SEC determined that Holdings would meet the so-called objective criteria for exemption as an intrastate company under section 3(a)(1), 15 U.S.C. § 79c(a)(1), after it acquired WP & L. That determination is not questioned here. The SEC must withhold such an exemption, however, when it determines that freedom of the company from the Act would be detrimen-

tal to the public interest. 15 U.S.C. § 79c(a). Petitioner contends that the SEC erred by failing to conduct a hearing on whether Holdings's non-utility diversification plans were detrimental to the public interest, but we do not so find.

PUHCA is undoubtedly hostile to diversification by non-exempt registered holding companies. *See id.* § 79k(b)(1); *Michigan Consolidated Gas Co. v. SEC*, 444 F.2d 913, 916 (D.C.Cir.1971). Nevertheless, the SEC has rejected a *per se* rule of prohibiting non-utility diversification by exempt holding companies. *See, e.g., Pacific Lighting Corp.*, 45 S.E.C. 152, 158–60 (1973). Instead, the Commission has tolerated limited diversification by exempt companies when the diversification is conducted through separate corporate subsidiaries subject to state regulation and there are other safeguards. *See id.* at 161–62; *cf.* 54 Fed.Reg. 6,701 (1989) (proposed regulations). In the instant decision, the Commission relied on the fact that Wisconsin law and the order of the Public Service Commission of Wisconsin imposed adequate limitations and safeguards on Holdings's diversification. *WPL Holdings*, 40 S.E.C. Docket at 656. The Commission also relied on its ability to monitor developments and revise or revoke the exemption as necessary. *See id.*

It is well settled that evidentiary hearings are required only when a genuine issue of material fact exists. *See, e.g., Association of Massachusetts Consumers, Inc. v. SEC*, 516 F.2d 711, 714–15 (D.C.Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). Suffice it to say that we are not persuaded that the facts alleged by petitioner are material to the future effect of Holdings's diversification plans, taking into account the state-imposed safeguards. Further, we are not prepared to say that the Commission abdicates its duty in an exemption determina-

---

**3.** Holdings challenges Decade's standing to bring this petition on the grounds that the interests it asserts are not germane to Decade's purpose as an environmental organization. *See generally Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Decade has established, however, that its de facto purposes have grown to include public utility consumer advocacy, and we find that on this basis it has standing to bring the petition.

tion by deciding to rely, watchfully, on the course of state regulation. Accordingly, we do not find that the SEC erred by failing to hold an evidentiary hearing on diversification.

## B. *Sections 10(c)(1) and 11(b)(2)*

■ Petitioner also contends that the SEC erroneously determined that the presence of Holdings, a non-operational holding company, did not unnecessarily complicate the corporate structure of WP & L. As with the diversification issue, the parties do not disagree on the basic test to be applied. Section 10(c)(1) of the Act, 15 U.S.C. § 79j(c)(1), directs the SEC not to approve an acquisition that is "detrimental to the carrying out of the provisions of" section 11, *id.* § 79k. Section 11(b)(2) empowers the SEC "to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure" of a registered holding company. *Id.* § 79k(b)(2). The Commission requires even exempt companies to justify creation of a new holding company by showing that the merger creates "significant benefits." *Peoples Gas Light,* 43 S.E.C. at 628–29.

The SEC found that there were such benefits in the instant case, although its discussion was limited to incorporation of its *Wisconsin Energy* decision. *WPL Holdings,* 40 S.E.C. Docket at 636. Holdings's application indicated that the holding company structure was necessary to deal with competition in the energy industry, to "refocus various utility activities, [to] facilitate selective diversification into nonutility businesses, [to] afford separation between the utility and nonutility businesses, and [to] provide additional flexibility for financing and for maintaining appropriate utility capital ratios." *Id.* at 636. Those benefits closely resemble those found to exist in *Wisconsin Energy,* 37 S.E.C. Docket at 397, upon which the SEC expressly relied in the instant case. *See supra* page 6. In addition, the SEC gave weight to the State of Wisconsin's legislative judgment that it is desirable for an intrastate utility to make limited diversified investments to encour-age economic growth within its service area. 37 S.E.C. Docket at 397.

Decade characterizes these purposes and benefits of the holding company as speculative and irrelevant to the operation of the utility, and argues that neither Holdings nor the SEC claims that a holding company is necessary to achieve these ends. We are not persuaded. The application and its supporting submissions provide evidence of the claimed benefits; inasmuch as the SEC's decision rested on its predictions as to the future effects of the diversification, it is appropriate for us to defer to the agency's expertise. *See SEC v. New England Electric System,* 390 U.S. 207, 211, 88 S.Ct. 916, 919, 19 L.Ed.2d 1042 (1968) (economic forecasting of holding company actions calls on SEC expertise); *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 594–95, 101 S.Ct. 1266, 1274–75, 67 L.Ed.2d 521 (1981). We note that the planned use of the holding company as a mechanism to maintain appropriate capital levels is plainly related to the operation of the utility. We cannot say that the SEC acted arbitrarily or capriciously in crediting any of the other benefits claimed by Holdings to be derived from the new structure. Nor has petitioner given any substantial reason why the SEC's watchful deference to the legislative and administrative judgment of a state regulating an intrastate holding company is not permissible under the Act.

## C. *Section 10(c)(2)*

■ Section 10(c)(2) requires the Commission to find, "affirmatively," *Electric Energy, Inc.,* 38 S.E.C. 658, 668 (1958), that a proposed acquisition "will serve the public interest *by tending towards* the economical and efficient development of an integrated public-utility system," 15 U.S.C. § 79j(c)(2) (emphasis added). The Commission determined that section 10(c)(2) was satisfied because the affiliated utilities were already integrated and there would be " 'no substantive changes in the operations or functioning to their system.' " *WPL Holdings,* 40 S.E.C. Docket at 648 (quoting *Wisconsin Energy,* 37 S.E.C. Docket at 398). Although the connection is not ex-

press in either the instant Commission decision or its *Wisconsin Energy* predecessor, the Commission advises us in its brief that its section 10(c)(2) analysis also included consideration of the *Wisconsin Energy*-endorsed corporate structure benefits analysis.

Decade contends, and we must agree, that the Commission's test fails to conform to the requirements of the statute. To the extent that it is express, the section 10(c)(2) test utilized in the SEC's decision, the *Wisconsin Energy* decision on which it relies, and the *Peoples Gas Light* decision on which *Wisconsin Energy* in turn relies, is simply that there be "no substantive changes in the operations or the functioning" of an already integrated system. *See WPL Holdings*, 40 S.E.C. Docket at 648; *accord Wisconsin Energy*, 37 S.E.C. Docket at 398; *Peoples Gas Light*, 43 S.E.C. at 630. That test plainly gives no effect to the express language of the statute, which permits the SEC to approve acquisition of a utility only when the Commission has found that the acquisition "tend[s] towards" the economical and efficient development of an integrated system.

Expressly, the SEC did no more than find that there is an already integrated system. As it has recognized elsewhere, however, "something more is required, namely, a showing of efficiencies and economies by virtue of the affiliation" in order to give "meaning to the language of section 10(c)(2)." *Union Electric Co.*, 45 S.E.C. 489, 494 (1974). In that case, the SEC found the "something more" that was necessary in, among other things, "the substantial operational and financial resources" that the acquiring entity would make available to its much smaller acquisition. *Id.* The SEC contends that it made such a showing here in its earlier section 10(c)(1) analysis. *See supra* page 527. But the Commission made no such connection in its instant decision, or in its precursors. Moreover, the SEC has not explained how those findings, directed as they are to the section 10(c)(1) question of whether a holding company unnecessarily complicates the corporate structure, implicitly answer as well the section 10(c)(2) question wheth-

er the acquisition tends toward the economical and efficient development of an integrated system. In the absence of such a reasoned and minimally expressed explanation, we cannot accept the Commission's section 10(c)(1) analysis as satisfying the "tending towards" requirement of section 10(c)(2). Neither can we accept the rationalizations first advanced by counsel in this litigation. The familiar principles of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1942), prevent us from entertaining arguments not relied upon by the agency itself.

In short, *Chevron* review will not permit us to accept the Commission's interpretation of section 10(c)(2). As the Commission itself recognized in *Union Electric*, the express language of the section—requiring that the merger "serve the public interest *by tending towards* the economical and efficient development of an integrated public-utility system"—unambiguously requires not simply maintenance of an integrated *status quo*, but also the acquisition of "efficiencies and economies *by virtue of the affiliation*." 45 S.E.C. at 494 (emphasis added). However reasonable the Commission's approach might be in the absence of such unambiguously expressed congressional intent, the Commission did not operate in such an absence and neither can we. It may be that the 1935 requirement should no longer apply, but that is not a decision for the Commission or for us. Unless and until Congress repeals or amends the statute, the Commission is not at liberty to approve an acquisition without a properly based finding that the acquisition complies with the Act as it now exists. In this case the Commission has not met this duty.

### III. CONCLUSION

For the foregoing reasons, the petition for review is granted.