# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3073

MONETTA FINANCIAL SERVICES, INC.
and ROBERT S. BACARELLA,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

_____

On Petition for Review of an Order of
the Securities Exchange Commission.
No. 3-9546
_____

ARGUED FEBRUARY 17, 2004—DECIDED NOVEMBER 30, 2004
_____

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Monetta Financial Services, Inc.
("MFS"), a registered investment adviser, and its president,
Robert Bacarella, seek review of a Securities and Exchange
Commission ("SEC or Commission") order finding that MFS
violated Section 206(2) of the Investment Advisers Act by
failing to disclose that it allocated shares of Initial Public
Offerings ("IPOs") to certain directors of its mutual fund
clients and that Bacarella aided and abetted in the violation.

While we agree with the SEC that MFS violated Section 206(2), we find that there is insufficient evidence to support a finding that Bacarella aided and abetted the violation. Likewise, we find that the sanctions the SEC imposed against MFS were excessive.

## I. BACKGROUND

Robert Bacarella is president and founder of Monetta Financial Services, Inc., a relatively small investment adviser registered with the SEC. MFS advises both mutual fund and individual clients. Its fund clients include Monetta Fund and Monetta Trust, both registered investment companies organized by Bacarella. Among MFS's individual clients were Richard Russo, William Valiant, and Paul Henry (collectively, director-clients), who, during the times relevant to this appeal, served as either directors or trustees of the aforementioned fund clients. Monetta Fund and Monetta Trust each had other directors and trustees who were not MFS clients.

From February 1993 to September 1993, MFS, who had been offered shares of IPOs from various broker-dealers, allocated shares in IPOs among its advisory clients, including the director-clients and their respective funds. The director-clients earned a total of approximately $50,000 from the IPOs. There is no indication that MFS allocated the shares inequitably or that MFS or Bacarella benefitted from the allocations to the director-clients; however, MFS did not disclose the fact that it allocated shares to the director-clients to the non-client directors or trustees of the funds. After reading a National Association of Securities Dealers ("NASD") interpretive document, Bacarella began to question the propriety of allocating shares of IPOs to "interested directors" and thus, in July 1993, MFS stopped allocating IPO shares to direc-

tors Valiant and Henry.[1] In September 1993, MFS also stopped allocating shares to Russo when Bacarella started to question the appropriateness of IPO allocations to directors generally.

Several months after MFS halted the allocations, the SEC conducted a routine examination of MFS and, years later, in February 1998, issued an Order Instituting Public Administrative Cease-And-Desist Proceedings ("OIP"). The OIP alleged violations by MFS, Bacarella, and the director-clients of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder. It further alleged that MFS violated and Bacarella aided and abetted MFS's violations of Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(1) and (2), by failing to disclose the fact that Monetta allocated IPO shares to director-clients. In December 2000, an Administrative Law Judge ("ALJ") issued a decision finding that MFS and Bacarella had violated these provisions.[2] MFS and Bacarella appealed the decision to the SEC.

In June 2003, the SEC issued an order dismissing all charges against MFS and Bacarella except the Section 206(2) Advisers Act charge. Despite the dismissal of the majority of the charges, the SEC imposed the same sanctions as the ALJ. The sanctions include: (1) a cease and desist order against both MFS and Bacarella; (2) a censure of MFS; (3)

---

[1] Both Henry and Valiant were interested directors as defined by Section 2(a)(19) of the Investment Company Act of 1940. 15 U.S.C. § 80a-2(a)(19).

[2] The ALJ also found that the director-clients, with the exception of Valiant, had violated the securities laws, but the director-clients are not before this court.

a 90-day suspension of Bacarella; and (3) civil money penalties of $200,000 against MFS and $100,000 against Bacarella. MFS and Bacarella petition this court for review of the SEC's decision pursuant to Section 213(a) of the Advisers Act.[3]

## II.  ANALYSIS

### A.  Standard of Review

We review deferentially the SEC's findings of fact, recognizing that such findings are conclusive if supported by substantial evidence. *Otto v. SEC*, 253 F.3d 960, 964 (7th Cir. 2001). Substantial evidence includes " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Johnson v. NTSB*, 979 F.2d 618, 620 (7th Cir. 1992) (citation omitted).

### B.  Section 206(2) Violation

MFS challenges the SEC's conclusion that its failure to disclose IPO allocations to director-clients violated Section 206(2) of the Advisers Act, which prohibits any investment adviser from "engag[ing] in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). MFS argues that given the absence of a rule explicitly requiring such disclosure and the fact there is no evidence that it allocated the shares inequitably, its failure to disclose the

---

[3] Section 213(a) of the Advisers Act provides, in pertinent part, that "[a]ny person . . . aggrieved by an order issued by the Commission under [Section 206(2)] may obtain a review of such order in the United States court of appeals within any circuit wherein such person resides or has his principal place of business . . . ." 15 U.S.C. § 80b-13(a).

allocations to the director-clients did not rise to the level of "fraud or deceit" under Section 206(2). We disagree.

In *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), the Supreme Court recognized that an investment adviser's failure to disclose material information constitutes "fraud or deceit" under the Investment Advisers Act. *Id.* at 200 ("Failure to disclose material facts must be deemed fraud or deceit within its intended meaning. . . ."). The investment adviser in *Capital Gains* engaged in the practice of "scalping," i.e., purchasing securities before recommending them to clients and thereafter selling the securities to take advantage of the increase in price that would follow the recommendation. *Id.* at 181. The Court held that this practice amounted to "fraud or deceit" under the Advisers Act and upheld the SEC's imposition of an injunction requiring disclosure to the adviser's clients of his dealings in recommended securities. *Id.* at 181-82. In so holding, the Court proclaimed that as a fiduciary, an investment adviser has "an affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts.'" *Id.* at 194 (internal quotations omitted).

Here, the allocation of IPO shares to director-clients was a material fact that MFS should have disclosed. Opportunities to invest in IPO shares are rare and therefore valuable to investors. *See Inv. Adviser Codes of Ethics*, Rel. No. IA-2256, 2004 WL 1488752, at *6 (July 2, 2004) (noting that "[m]ost individuals rarely have the opportunity to invest in [IPOs or private placements]"). Thus, when MFS allocated some shares of the IPOs to its director-clients, it did so at the expense of the fund clients, as the funds were thereby allocated a smaller number of shares. In effect, MFS's allocation to both director-clients and fund clients placed the parties in competition for the same shares. As the SEC reasoned, this is particularly troublesome since MFS had an incentive to favor the director-clients over the fund clients when allocating the shares, given the directors' duty to

monitor and police the fund's relationship with its investment adviser. *See* 15 U.S.C. § 80a-15(c) (outlining directors' duty to approve contracts with investment advisers); *see also Burks v. Lasker*, 441 U.S. 471, 483 (1979) (noting the directors' role of reviewing and approving contracts between mutual funds and their investment advisers).

That MFS did not, in fact, favor the director-clients over the funds is of no consequence because the potential for abuse nonetheless existed. *See Capital Gains*, 375 U.S. at 191-92 (noting that the Advisers Act evinced a "congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline as [sic] investment adviser—consciously or unconsciously—to render advice which was not disinterested"). *Capital Gains* made clear that a violation of the Advisers Act requires neither injury nor intent to injure. *Id.* at 192. After all, the Advisers Act was "directed not only at dishonor, but also at conduct that tempts dishonor." *Id.* at 200 (internal quotations omitted). Furthermore, "[t]o impose upon the [SEC] the burden of showing deliberate dishonesty as a condition precedent to protecting investors through the prophylaxis of disclosure would effectively nullify the protective purposes of the statute." *Id.*

Attempting to avoid the conclusion that its failure to disclose the IPO allocations violated Section 206(2), MFS points to rules the SEC promulgated in 2001 that only require directors to disclose IPO allocations when accompanied by special treatment. *See Role of Indep. Dirs. of Inv. Cos.*, Rel. No. IC-24816, 66 Fed. Reg. 3734, 3744 (Jan. 16, 2001). Because there is no evidence of special treatment here, MFS argues that these rules suggest that it had no duty to disclose the allocations. But these rules are of little import, as they relate to directors' responsibilities, rather than the duties of an investment adviser such as MFS.

MFS also asserts that it acted in a manner consistent with industry practice. Undoubtedly, allocations of IPO

shares to mutual fund directors were commonplace, but MFS has not pointed to any evidence suggesting that investment advisers' non-disclosure of the allocations was also industry practice. In any event, the mere presence of an industry practice is insufficient to overcome the conclusion that MFS violated Section 206(2). *See SEC v. Dain Rauscher*, 254 F.3d 852, 857 (9th Cir. 2001) ("The industry standard is a relevant factor, but the controlling standard remains one of reasonable prudence.").

In the end, we agree with the SEC that MFS had a duty to disclose the fact that it allocated IPO shares to the director-clients. Its failure to do so constituted fraud or deceit within the meaning of Section 206(2).

## C.   Aiding and Abetting

We now consider Bacarella's argument that the SEC erred by finding that he aided and abetted MFS's violation of Section 206(2) of the Advisers Act. The SEC will find one liable for aiding and abetting where: (1) there is "a primary violation; (2) the aider and abettor generally was aware or knew that his or her actions were part of an overall course of conduct that was improper or illegal; and (3) the aider and abettor substantially assisted the primary violation." *In the Matter of Monetta Fin. Servs. Inc.*, AP File No. 3-9546, Rel. No. IA-2136, 2003 WL 21310330, at *4; *see also SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (applying the same factors).

While we do not quarrel with the SEC's conclusion that Bacarella substantially assisted in MFS's primary violation, we agree with Bacarella that the SEC has not satisfied the awareness requirement. The SEC has not provided any evidence suggesting that he was, in fact, aware that disclosure of the IPO allocations was required. Even if, as the SEC contends and several courts have held, the awareness requirement can be satisfied by a finding of recklessness, *see, e.g.*,

*Geman v. SEC*, 334 F.3d 1183, 1195 (10th Cir. 2003); *Graham v. SEC*, 222 F.3d 994, 1004 (D.C. Cir. 2000), it remains difficult to see how this prerequisite has been met here. No rules expressly required disclosure of the IPO allocations. Moreover, the SEC did not find that MFS allocated the shares inequitably—the presence of inequitable allocations surely should have alerted Bacarella to the fact that disclosure, at the very least, was required. *See Graham*, 222 F.3d at 1006 (noting as significant the absence of red flags in assessing one's liability as an aider and abetter); *see also Howard v. SEC*, 376 F.3d 1136, 1143 (D.C. Cir. 2004) (same). Therefore, we cannot say that the SEC's finding that Bacarella was aware that disclosure was required and liable for aiding and abetting MFS's Section 206(2) violation is supported by substantial evidence. Thus, we vacate the portion of the SEC's order finding Bacarella liable for aiding and abetting.

### D. Sanctions

Finally, we turn to MFS's argument that the sanctions the SEC imposed were excessive. This court will reverse a SEC order prescribing sanctions upon a finding that the SEC abused its discretion. *Mister Disc. Stockbrokers v. SEC*, 768 F.2d 875, 879 (7th Cir. 1985); *see also WHX Corp. v. SEC*, 362 F.3d 854, 859 (D.C. Cir. 2004) (noting that sanctions orders should be reversed if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Further, "[t]he fashioning of an appropriate and reasonable remedy is for the Commission, not this court, and the Commission's choice of a sanction may be overturned only if 'it is found unwarranted in law . . . or without justification in fact.'" *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112-13 (1946)); *see also Vernazza v. SEC*, 327 F.3d 851, 862 (9th Cir. 2003).

In assessing the appropriate sanctions, the Commision often considers "the egregiousness of a respondent's actions, the isolated or recurrent nature of the violation, the degree of scienter, the sincerity of a respondent's assurances against future violations, the respondent's recognition that the conduct was wrongful, and the likelihood of recurring violations." *Monetta*, 2003 WL 21310330, at *9.

Although the SEC's opinion references these factors, the opinion does not reflect that the SEC meaningfully considered these factors when it imposed the sanctions.[4] In fact, many of the aforementioned factors suggest that the sanctions are excessive. To begin with, the conduct was not particularly egregious: there was little indication that the allocations were inequitable and no rules expressly required disclosure. *See WHX Corp.*, 362 F.3d at 860 (vacating sanction order where no rule or formal Commission precedent prohibited the behavior at issue). Second, the allocations took place a decade ago, for an eight-month period, making it a fairly isolated occurrence and suggesting that the likelihood of a future violation is slight. *See id.* at 861 (noting the isolated nature of the violation before finding the sanction excessive); *see also Johnson v. SEC*, 87 F.3d 484, 490 n.9 (D.C. Cir. 1996) (commenting that five-year delay in instituting pro-

---

[4] In imposing sanctions against MFS and Bacarella, the SEC noted: "MFS, through Bacarella, ignored its fiduciary duty to disclose material information to those entitled to its utmost loyalty and good faith. Bacarella acted with scienter. Bacarella made no effort to disclose these transactions to the remaining directors and trustees and was not candid with the Commission's examiners. Bacarella's actions and his testimony at the hearing evince a lack of understanding of his fiduciary obligations. MFS' and Bacarella's insistence that, since no actual conflict existed, they had no duty to disclose the information to the Fund Clients' boards shows a lack of appreciation for MFS' obligations as an adviser to an investment company." *Monetta*, 2003 WL 21310330, at *9.

ceedings was not indicative of concern about future violations). Third, MFS voluntarily ceased the allocations and MFS no longer has individual clients, also making the possibility of a future violation more remote. Finally, without explanation, the SEC imposed the same sanctions as the ALJ despite the SEC's dismissal of the majority of the charges. Taken together, these factors suggest that the Commission abused its discretion in sanctioning MFS.

We, therefore, vacate the SEC's order imposing sanctions and the portion of the SEC's opinion which reasons that sanctions are appropriate, and we remand to the Commission for reconsideration in a manner consistent with this opinion of the sanctions imposed against MFS.

### III.  CONCLUSION

For the foregoing reasons, the petition for review is GRANTED in part and DENIED in part.

A true Copy:
     Teste:

                          _____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*