

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2005

# PTR v. SEC

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4451

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"PTR v. SEC" (2005). 2005 Decisions. Paper 246.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/246

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4451
_____

PTR, INC., 1900 Market Street,
Philadelphia, PA 19103 and
DENNIS McBRIDE, For Review of Disciplinary
Action Taken by the
PHILADELPHIA STOCK EXCHANGE, INC.,

Petitioners

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent
_____

On Petition for Review from an
Order of the Securities and Exchange Commission
(No. 3-11470)
_____

Argued October 26, 2005

Before:  SLOVITER, FISHER and GREENBERG, *Circuit Judges*.

(Filed: November 9, 2005)

Paula D. Shaffner
Mark C. Cawley (Argued)
Saul Ewing
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA  19102
	*Attorneys for Petitioners*

Catherine Broderick
Mark R. Pennington (Argued)
Securities & Exchange Commission
100 F Street, N.E.
Washington, DC 20549
        *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

At issue in this case are disciplinary sanctions imposed by the Philadelphia Stock

Exchange, Inc. ("Exchange"), against one of its members, PTR, Inc. ("PTR"), and PTR's

executive vice president, Dennis McBride ("McBride"). McBride was found to have,

among other things, misrepresented eighty-six trading orders from "broker-dealers" as

orders from "public customers," in violation of Exchange rules.[1] The Exchange imposed

upon PTR and McBride a fine of $86,000 and a suspension from the Exchange of three

months. The SEC subsequently sustained this decision.

This timely petition for review followed. PTR and McBride claim that the

Exchange violated its governing procedural rules and the Securities Exchange Act of

---

[1]A public customer is, essentially, an entity that directs trades for its own benefit, while a broker-dealer directs trades either as an agent for a customer (broker) or in response to customer sales or purchases from the entity's holdings (dealer). The purpose of the rule against misrepresentations was to ensure that the preferences accorded to public-customer orders – for which the Exchange offered "firm" price quotations up to a "disseminated size" – were not improperly exploited by broker-dealers.

2

1934, Pub. L. No. 73-290, 48 Stat. 881, and that the SEC erred in finding that the sanctions imposed on petitioners were not excessive or oppressive. We have jurisdiction under 15 U.S.C. § 78y and will deny the petition.

## I.

The Philadelphia Stock Exchange is a national securities exchange registered with the SEC under the Securities Exchange Act. The Act allows a registered exchange to promulgate rules regulating the conduct of members and to enforce those rules through disciplinary proceedings and the imposition of sanctions. *See* 15 U.S.C. §§ 78f, 78s.

Pursuant to this authority, the Exchange has promulgated a series of rules governing members' conduct and establishing a multi-tiered disciplinary process. Violations of the rules are adjudicated in the first instance by the Business Conduct Committee ("BCC"), which investigates possible violations and, following a hearing, decides whether a violation has occurred and what sanctions are appropriate. If exceptions are filed to the decision of the BCC, the matter is reviewed by the Board of Governors ("Board"). The Board may refer the matter to an advisory committee, made up of three Board members, for a recommendation prior to decision. The final determination of the Board constitutes the final disciplinary decision of the Exchange.

Disciplinary proceedings against PTR and McBride commenced in July 2002. McBride was charged with, among other things, failing to "make reasonable efforts to ascertain whether each order entrusted to [him was] for the account of a [public] customer

3

or a broker-dealer." PTR was charged with the same violations under an Exchange rule allowing a "member organization [to] be charged with any violation . . . committed by its officers . . . as though such violation were its own."

The BCC conducted a three-day hearing on the matter. McBride conceded that he had executed eighty-six separate orders from "broker-dealers" as orders from "public customers" without making reasonable efforts to confirm the source of the orders. However, he argued that his mistakes had been inadvertent. More notably, he stated that, at the time of the violations, he had not viewed compliance with the rule as his obligation.

McBride also admitted that this was not the first time that he had failed to comply with the rule. In 1998, he was found to have caused three broker-dealer orders to be executed as if they were public-customer orders. Pursuant to a settlement with the Exchange, he was fined $500 for each violation, for a total of $1,500. The fine was paid by PTR.

Following the hearing, the BCC found that McBride had committed the alleged violations and that both PTR and McBride were responsible for them. It discounted as unconvincing and irrelevant McBride's claims that the violations were the result of excusable negligence. It censured PTR and McBride, imposed a fine of $86,000 (jointly and severally), and suspended McBride from association with any member of the Exchange for a period of one week.

PTR and McBride sought review of the BCC's decision by the Board of Governors. The petition for review asserted that the fine imposed by the BCC was excessive in light of the nature of the violations and comparable sanctions imposed against similarly situated traders. The petition did not expressly challenge the one-week suspension.

The matter was referred to an advisory committee. The committee heard oral argument and issued a recommendation to the Board of Governors suggesting that the sanctions imposed on PTR and McBride were appropriate in light of McBride's disciplinary history.

The Board issued its final decision soon thereafter. It affirmed the fine of $86,000 but rejected, as an abuse of discretion, the suspension of one week. It reasoned:

> Increasing the effectiveness of suspension as a sanction is especially necessary in this case, where, in light of McBride's disciplinary history, he should have had an intimate familiarity with the requirements of [the rule], and exercised the affirmative due diligence required to assure himself that the rule was not being violated. . . . A one-week suspension could be used by an individual to take a vacation or to conduct other personal business without imposing any particular difficulties or hardship on the individual, making it a fairly ineffective sanction.

(A. 135a (footnotes omitted).) The Board concluded that a three-month suspension was necessary to ensure that the sanction would have "more than a minimal impact."

PTR and McBride petitioned the SEC for review of the decision of the Board of Governors pursuant to section 19(d)(2) of the Securities Exchange Act, 15 U.S.C. § 78s(d)(2) ("Any [disciplinary] action . . . [by] a self-regulatory organization . . . shall be

5

subject to review by the appropriate regulatory agency . . . .").  The SEC affirmed the

decision of the Board.  Finding that McBride's conduct and testimony "evidences a

disturbing disregard for the standards that govern the conduct of securities professionals

doing business on the Exchange," it concluded that "[t]he Exchange was justified in

serving notice with its sanctions that such an attitude cannot be tolerated if further

violations are to be prevented."

II.

A.

PTR and McBride assert that, by increasing the term of the suspension without

notice or a hearing, the Board violated procedural provisions of Exchange rules and the

Securities Exchange Act.[2]  Whether an administrative entity has complied with regulatory

and statutory procedural requirements is a question of law, subject to plenary review with

due deference to any interpretation followed by the administrative entity.  *See, e.g.*, *SEC

v. Zandford*, 535 U.S. 813, 819-20 (2002); *Levine v. SEC*, 407 F.3d 178, 182 (3d Cir.

2005); *Nat'l Rural Elec. Coop. v. SEC*, 276 F.3d 609, 614 (D.C. Cir. 2002).

---

[2]The SEC argues that PTR and McBride did not challenge the Board's compliance with procedural requirements during agency proceedings and are now precluded from raising the issue.  *See* 15 U.S.C. § 78y(c)(1) ("No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.").  Because we dispose of these objections on the merits, we need not determine whether they were "urged before" the agency.

6

1.

PTR and McBride argue that the Board was not permitted under Exchange Rule 960.9(b) to increase the term of the suspension when neither the parties nor the Board had previously raised the issue. Rule 960.9(b) prescribes the procedures by which a decision of the BCC or an advisory committee is reviewed:

(i)     The review shall be conducted by the Board of Governors or an Advisory Committee thereof . . . . Unless the Board of Governors or the Advisory Committee shall decide to hear oral arguments, such review shall be based solely upon the record and written exceptions filed by the parties.

. . . .

(iii)    Should the review be conducted by an Advisory Committee, the Advisory Committee shall submit a written report to the Board of Governors. . . . The Board of Governors by a majority vote of its members, shall decide to affirm, reject or modify, in whole or in part the recommendations of the Advisory Committee. *Such modification may include an increase or decrease of the sanction.*[3]

Notice of Proposed Rule Change by the Philadelphia Stock Exchange, Inc., Exchange Act Release No. 43415, 73 SEC Docket 1101 (Oct. 4, 2000) (emphasis added), *approved by* Release No. 43584, 73 SEC Docket 2047 (Nov. 17, 2000).

These provisions clearly authorize the Board to increase a sanction without regard to whether the issue was previously raised. The third paragraph of subsection (b) explicitly states that, in its review, the Board may "modify" the decision of an advisory

---

[3]The second paragraph of subsection (b) prescribes the same scope and standard of review but applies when the Board does not refer the matter to an advisory committee.

committee "in whole or in part" and that "[s]uch modification may include an increase or decrease in the sanction." There is nothing in this provision to suggest that this authority is limited to circumstances in which the issue is raised by a party or that the issue may be "waived" by the Board. The only reasonable reading of the provision is that it grants to the Board the ability to increase a sanction in its discretion, notwithstanding the failure of the parties to address the matter.

This interpretation comports with the evidentiary scope of review established in the first paragraph of subsection (b). This paragraph restricts the evidence that may be considered by the Board to the administrative record. The decision of the BCC and the recommendation of the advisory committee are part of this record and, as such, all aspects of those decisions may be reviewed by the Board consistent with Rule 906.9(b)(i). The Board's action in this case fully complied with Exchange rules.

2.

PTR and McBride also contend that the Board violated section 6(d) of the Securities Exchange Act, 15 U.S.C. § 78f(d), by increasing the length of the suspension without first providing notice and a renewed opportunity for a hearing on the issue. Section 6(d) provides, in pertinent part, as follows:

> In any proceeding by a national securities exchange to determine whether a member or person associated with a member should be disciplined[,] . . . the exchange shall bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record.

*Id.* § 78f(d)(1). An exchange cannot discipline a member unless it offers advance notice of the charges and a reasonable opportunity for a hearing. *Id.*; *see also United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 241-44 (1973); *Todd & Co. v. SEC*, 557 F.2d 1008, 1014 (3d Cir. 1977).

These requirements were satisfied in this case. PTR and McBride were given notice of the charges against them and an opportunity for a full hearing before the BCC. They were allowed to present evidence relating to the existence of violations *and* the sanctions to be imposed. They were permitted to appeal from the adverse decision of the BCC to the Board and were notified, through Rule 960.9(b), that the Board could increase the sanctions in its discretion. PTR and McBride received actual notice of the charges and potential sanctions against them and were provided a hearing at which they were able to address these issues. The disciplinary proceedings complied fully with section 6(d) of the Securities Exchange Act.

The primary case on which PTR and McBride rely, *Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir. 1977), is inapposite. In *Todd*, we held that the board of governors of an exchange could not, without giving prior notice to the parties, reinstate a charge that had been dismissed by the first-level disciplinary body. *Id.* at 1014. Those circumstances are not present here. The Board in this case did not reinstate a dismissed charge or otherwise alter the allegations against PTR and McBride. Rather, it simply modified the sanctions

9

that had been recommended by the advisory committee, an action that is not precluded by the Securities Exchange Act and is expressly allowed by Rule 960.9(b).

The Exchange offered PTR and McBride adequate notice of the charges and an opportunity to defend themselves at a hearing. They were allowed to present evidence and argument relating to the nature of the charges and any sanctions to be imposed. Following the BCC's decision, they petitioned for review by the Board and were notified, by virtue of Rule 960.9(b), that the Board possessed the authority to increase the sanctions in its discretion. The Board exercised this authority consistent with section 6(d) of the Securities Exchange Act.

B.

PTR and McBride also argue that, notwithstanding the alleged procedural errors committed by the Board, the SEC erred in finding that the sanctions imposed were not "excessive or oppressive" under section 19(e) of the Securities Exchange Act, 15 U.S.C. § 78s(e) (permitting the SEC to "cancel" or "reduce" any sanction found to be "excessive or oppressive"). The agency's decision to uphold a sanction is reviewed for abuse of discretion and will be overturned only if "unwarranted in law or . . . without justification in fact." *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185-86 (1973) (quoting *Am. Power Co. v. SEC*, 329 U.S. 90, 112 (1946)); *McCarthy v. SEC*, 406 F.3d 179, 188 (2d Cir. 2005); *WHX Corp. v. SEC*, 362 F.3d 854, 859 (D.C. Cir. 2004).

10

The primary focus of our review is whether the agency gave "meaningful consideration" to the relevant factors in reaching its decision. *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 957-58 (7th Cir. 2004); *see also, e.g., McCarthy*, 406 F.3d at 188; *cf. SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he grounds upon which the administrative agency acted [must be] clearly disclosed and adequately sustained."). These factors include the egregiousness and willfulness of the violations, the risk of future violations, the benefit to the violator, the harm to third parties and the exchange, and the disciplinary history of the violator. *See McCarthy*, 406 F.3d at 190; *Monetta*, 390 F.3d at 957-58; *Geiger v. SEC*, 363 F.3d 481, 488 (D.C. Cir. 2004); *Steadman v. SEC*, 603 F.2d 1126, 1139-41 (5th Cir. 1979); *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 184 (2d Cir. 1976). The nature of sanctions imposed in similar cases may also be considered; however, "[t]he employment of a sanction within the authority of an administrative agency is . . . not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Butz*, 411 U.S. at 187; *see also Arthur Lipper*, 547 F.2d at 184; *cf. Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 183 (D.C. Cir. 2005) (stating that, "[a]lthough 'mere unevenness in the application of [a] sanction does not render its application in a particular case unwarranted in law," an agency's "unprecedented and unexplained departure from [a] consistent policy" is a relevant consideration) (quoting *Butz*, 411 U.S. at 188).

The SEC appropriately weighed these factors in this case. It noted that the violations at issue were inadvertent and did not benefit PTR and McBride or harm the Exchange. It also recognized that, in other cases involving misrepresentations, lesser sanctions had been imposed.

Nevertheless, the agency determined that these factors were outweighed by the risk of future violations and the disciplinary history of the violator. Less than three years before the incidents in this case, McBride had committed the same violations of the same Exchange rule and had been fined $500 for each of those violations. McBride should have been familiar with these requirements and modeled his behavior accordingly. Yet, he subsequently engaged in the same conduct and, with some degree of temerity, explained to the BCC that he did not view compliance with the rule as his responsibility. The SEC was fully justified in finding that this statement evinced a "disturbing disregard" for regulatory standards, warranting heavy sanctions for deterrent effect.

The SEC distinguished other decisions in which the violator had received lesser sanctions for similar misconduct. Those cases involved circumstances in which the trader had intentionally tested an ambiguous rule or had settled with the exchange, avoiding the costs associated with disciplinary proceedings. In contrast, the rule under which PTR and McBride were charged was clear and unambiguous, and the Exchange was forced to expend substantial time and resources in prosecuting the case.

The SEC appropriately considered the relevant factors and determined that a fine of $1,000 per violation – double the fine imposed for the previous violations – and a suspension of three months were reasonably necessary to impress upon PTR and McBride the necessity of strict compliance with Exchange rules. This conclusion does not represent an abuse of the agency's broad discretion.

III.

The fine and suspension at issue in this case were imposed by the Exchange in accordance with its governing rules and were neither excessive nor oppressive in light of the disciplinary history of PTR and McBride. The SEC did not err in its decision to sustain these sanctions.

Accordingly, the petition for review will be denied.