

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2008

# Amanat v. SEC

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5209

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Amanat v. SEC" (2008). *2008 Decisions*. Paper 1437.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1437

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-5209

IRFAN MOHAMMED AMANAT,
Petitioner

v.

SECURITIES AND EXCHANGE COMMISSION,
Respondent

PETITION FOR REVIEW OF AN ORDER OF THE
SECURITIES AND EXCHANGE COMMISSION
No. 3-11813

Argued:  March 5, 2008

Before: BARRY, JORDAN and HARDIMAN, <u>Circuit Judges</u>

(Opinion Filed: March 17, 2008)

Martin S. Siegel, Esq. (Argued)
David J. Molton, Esq.
Brown Rudnick Beriack Israels
7 Times Square
New York, NY 10036

<u>Counsel for Petitioner</u>

Susan S. McDonald, Esq. (Argued)
Securities & Exchange Commission
100 F Street, N.E.
Washington, DC 20549

Counsel for Respondent

---

OPINION

---

BARRY, Circuit Judge

Petitioner Irfan Amanat seeks review of the decision of the Securities and Exchange Commission (the "Commission") finding that he willfully violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. We will deny the petition.

**I.**

Because we write only for the parties, familiarity with the facts is presumed, and we include only those facts that are relevant to our analysis.

Amanat was the Chief Technology Officer for Tradescape Corp. ("Tradescape"), a securities and technology company. Tradescape was the parent company of several securities trading entities. One such entity was MarketXT, an electronic communications network that also was a registered broker-dealer and a member of the National Association of Securities Dealers ("NASD"), and thus eligible to trade on NASDAQ. In late 2001, Amanat learned that NASDAQ had instituted a rebate program to share with

NASD members a portion of the revenue it earned by selling transaction data – so-called "market data revenue"[1] – provided the members met a minimum threshold of qualifying trades during the financial quarter. As a NASD member, MarketXT was eligible to participate in the rebate program, and Amanat became interested in obtaining a rebate for the quarter ending March 31, 2002. However, as of mid-March, MarketXT was not on pace to meet the minimum threshold of qualifying trades.

Recognizing that MarketXT needed to generate a large number of trades in a short period of time to qualify for a rebate, Amanat enhanced an existing computer program he had designed to automatically execute qualifying trades. Every few seconds, the program placed a pair of market orders – one "buy" order and one "sell" order – for the same number of shares of the same security. The orders were placed on MarketXT, ostensibly to be routed out to the market (*i.e.*, to NASDAQ). One second or less separated the buy order from the corresponding sell order, and only a few seconds separated each consecutive buy/sell pair. Amanat testified that he believed the buy order would be routed out to the market before the sell order hit MarketXT's system. However, apparently because of the manner in which the program was coded, or perhaps because of alterations made to MarketXT's order processing system, thousands of Amanat's buy

<hr>

[1] NASDAQ was a member of the Consolidated Tape Association ("CTA"). The CTA gathered trading data from its members – NASDAQ and the major U.S. securities exchanges – consolidated that data, and sold it to vendors such as Reuters and Bloomberg who then disseminated it to investors. The CTA earned substantial revenue from selling this data ("market data revenue"), which it distributed to its members based on the number of qualifying trades each member reported.

3

orders were held on MarketXT's system long enough to execute against his sell orders. Nevertheless, even after learning that there were problems with his trades, Amanat (on behalf of MarketXT) sought and obtained a rebate of approximately $50,000.

The Commission's Division of Enforcement instituted civil administrative proceedings against Amanat, alleging that he willfully violated § 10(b) and Rule 10b-5 by generating thousands of wash sales and matched orders in order to receive a NASDAQ rebate. Following a five-day hearing, an Administrative Law Judge ruled in favor of Amanat. On administrative appeal, the Commission conducted an independent review of the record and reversed, finding that Amanat willfully violated § 10(b) and Rule 10b-5. The Commission barred him from associating with any broker-dealer for a period of five years, entered a cease and desist order, and imposed a civil monetary penalty of $60,000.

In his petition, Amanat challenges the Commission's conclusion that he willfully violated § 10(b) and Rule 10b-5, and claims that the sanctions imposed are unreasonable.

**II.**

We have jurisdiction to review a final order of the Commission pursuant to 15 U.S.C. § 78y(a)(1). "Commission findings of fact are conclusive for a reviewing court 'if supported by substantial evidence.'" *Levine v. SEC*, 407 F.3d 178, 182 (3d Cir. 2005) (citation omitted). Substantial evidence exists if "a reasonable mind might accept [the] evidentiary record as adequate to support [the Commission's] conclusion." *Bradbury v. SEC*, 512 F.3d 634, 639 (D.C. Cir. 2008) (citation omitted); *see also Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2004) ("Substantial evidence includes such

4

evidence as a reasonable mind might accept as adequate to support a conclusion.")
(citation and internal quotation marks omitted).  With respect to legal conclusions, "[t]he
SEC's interpretation of ambiguous text in the Exchange Act is 'entitled to deference if it
is reasonable.'"  *Levine*, 407 F.3d at 182 (citation omitted).

The Commission's choice of sanctions is reviewed for abuse of discretion, and we
will overturn the imposition of a particular sanction only if it is "unwarranted in law
or...without justification in fact."  *American Power & Light Co. v. SEC*, 329 U.S. 90, 112-
13 (1946); *see also Lowry v. SEC*, 340 F.3d 501, 504 (8th Cir. 2003); *Rizek v. SEC*,  215
F.3d 157, 160 (1st Cir. 2000); *Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir. 1994).

## III.

Amanat challenges the Commission's conclusion – set forth in a comprehensive,
twenty-four page opinion – that he willfully violated § 10(b) and Rule 10b-5.  Based on
its independent review of the record, the Commission found that Amanat designed and
operated his automatic trading program for the sole purpose of capturing rebate revenue,
knowingly engaged in thousands of wash sales and matched orders at the end of the
financial quarter to meet the eligibility threshold, and – despite having been told that his
trades were "wrong" – contacted NASDAQ to request payment.  The Commission further
found that, as a result of Amanat's conduct, the CTA was deceived into paying money to
NASDAQ (some of which was rebated to MarketXT) that it would not have paid had it
known the true nature of Amanat's trades.  Were we permitted to conduct a *de novo*
review of the record, we might well reach a different conclusion with respect to certain of

5

the Commission's findings. However, under the deferential substantial evidence standard of review, we are bound to accept those findings so long as they are based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Monetta Fin. Servs.*, 390 F.3d at 955. The Commission's findings easily satisfy that test whether judged under a specific intent or a recklessness requirement. Because the conclusion reached by the Commission, *i.e.*, that Amanat willfully violated § 10(b) and Rule 10b-5, is reasonable and supported by substantial evidence, we will not disturb it.

Amanat also challenges the sanctions imposed by the Commission. We recognize that the sanctions are harsh. However, the Commission found that Amanat's violation was serious and capable of repetition. It also found that, as a result of his youth, experience and continuing involvement in the financial industry, he posed a risk of violating the securities laws in the future. Those findings are supported by substantial evidence. In light of those findings, and recognizing the Commission's expertise in these matters, *see American Power & Light*, 329 U.S. at 112-13, we find that the sanctions imposed were a proper exercise of the Commission's discretion.

## IV.

For the foregoing reasons, we will deny the petition for review.

6